**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PATRICIA RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17-cv-03656 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CODILIS & ASSICATES, P.C. and | ) | |
| SERVIS ONE, INC. D/B/A BSI FINANCIAL | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Patricia Rodriguez filed a Fair Debt Collection Practices Act (FDCPA) case against Codilis & Associates, P.C. and BSI Financial Services.[1] Both Defendants move to dismiss the Amended Complaint, arguing that Rodriguez lacks standing and fails to state a claim under the FDCPA. *See* R. 20, Codilis Mot. to Dismiss ¶¶ 4-5; R. 28, BSI Mot. to Dismiss at 1. For the reasons explained below, the Defendants' motions to dismiss are denied.

**I. Background**

For the purposes of this motion, the Court accepts as true the allegations in the Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition to the allegations in the pleading itself, documents attached to a complaint are considered part of the complaint. Fed. R. Civ. P. 10(c). Rodriguez brings a claim under the FDCPA for actions taken by Codilis and BSI in their attempt to foreclose

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

on a home mortgage taken out by Rodriguez. R. 19, Am. Compl. ¶¶ 3-4. After Rodriguez bought her home, the mortgage was transferred to a trustee servicer, an entity known as Christiana Trust. *Id.* ¶ 12. The loan went into default, and BSI began servicing the loan on behalf of Christiana Trust. *Id.* ¶ 14. BSI then assigned the debt to Codilis (which is a law firm) to collect, with Codilis allegedly acting as a representative of BSI. *Id.* ¶¶ 15-19. Sometime after the loan default, Christiana Trust, through BSI and Codilis, filed a motion for default and foreclosure (for convenience's sake, "the Motion") in the Circuit Court of Cook County to try to collect the debt. *Id.* ¶¶ 20-21.

In filing the Motion, the Defendants included several documents to support the foreclosure judgment requested from the state court, including: (1) an affidavit from the servicer's signing officer attesting to the amounts owed and expenses incurred based on her review of BSI's records (Affidavit of Amounts Due and Owing); (2) a Payoff Statement letter that BSI purportedly sent to Rodriguez describing the total amount due (Payoff Statement); and (3) a Codilis attorney certificate outlining the various attorney's fees and costs expended in the litigation (Certificate of Prove-up of Attorney Fees and Costs). R. 19-1, Am. Compl. Exh. 1.[2] Rodriguez alleges that various conflicting representations that the Defendants made in the Motion violated the FDCPA.

---

[2]For ease of reference, the Opinion will refer and cite to the Affidavit of Amounts Due and Owing as "the Affidavit"; the Payoff Statement letter from BSI as "the Payoff Statement"; and the Certificate of Prove-up of Attorney Fees and Costs as "the Certificate." *See* R. 19-1, Am. Compl. Exh. 1. All are part of a group exhibit attached to the Amended Complaint, which includes litigation documents from the foreclosure case in the Circuit Court of Cook County. As noted earlier, those documents are considered part of the complaint. Fed. R. Civ. P. 10(c).

Specifically, the servicer Affidavit showed that the "Total Amount Due through 4/14/2016" was $198,765.76, while the Payoff Statement stated that the "Total Amount to Pay Loan in Full on 4/14/16" was $201,781.65. Am. Compl. ¶¶ 23, 26; Affidavit at 6-8; Payoff Statement at 9-11.[3] Rodriguez claims the Certificate introduced another inconsistency in the amounts owed, because it claimed that the total court costs Codilis expended were $3,246.00. Am. Compl. ¶ 29; Certificate at 33-34. Those costs described a total of $1,960 listed as three different types of attorney's fees, including "Foreclosure Attorney Fees," "Amended Complaint Attorney Fees," and "Case Management Attorney Fees." Am. Compl. ¶¶ 30-31; Certificate at 33-34. In contrast, the Affidavit contains a line item for "Prior Attorney Fees,"—but only for $765.00. Am. Compl. ¶ 25; Affidavit at 7. There were also additional line items for late charges on the Affidavit and the Payoff Statement that did not match one another. *See* Affidavit at 6-8; Payoff Statement at 9-11. The Affidavit stated that the "Late Charges Accrued Prior to the Acceleration of the of the subject loan" were $268.84, Affidavit at 7, while the Payoff Statement stated that the "Unpaid Late Charge" was $873.73 with "Unpaid Fees" totaling $3,294.68. Payoff Statement at 9.

Finally, the Payoff Statement listed March 1, *2015* as the due date for the next payment on the loan—but the letter itself was dated March 16, *2016*. Am. Compl. ¶ 27. And though the bottom of the Payoff Statement explains, "This is an

---

[3]The Amended Complaint mistakenly asserts that the letter contains a payoff calculation of $210,781.65. Am. Compl. ¶ 26. The actual amount cited in the letter is $201,781.65. Payoff Statement at 9-11.

3

attempt to collect a debt," Payoff Statement at 11, Rodriguez alleges that BSI failed to identify itself as a debt collector. Am. Compl. ¶ 27.

Based on these inconsistencies, Rodriguez alleges that the Defendants' communications exposed her to a substantial risk of harm. Am. Compl. ¶ 10. Throughout the Amended Complaint, Rodriguez alleges that the conflicts would have confused an unsophisticated consumer. *See* Am. Compl. ¶¶ 34, 36, 37. And Rodriguez also alleges that receiving the false and conflicting information distressed, confused, and irritated her. Am. Compl. ¶ 55.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See, e.g., United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017).

4

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. Injury in Fact

Codilis first argues that Rodriguez lacks standing because she fails to articulate a concrete injury. Codilis Mot. to Dismiss ¶ 5. To have standing, plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). Mere procedural violations, without the concrete harm required by Article III, do not satisfy the requirements of Article III. *See Spokeo*, 136 U.S. at 1549. For an injury to be concrete, it "must be 'de facto'; that is, it must actually exist." *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1548). For example, the majority in *Spokeo* noted that "dissemination of an incorrect zip code, without more, could [not] work any concrete harm." *Spokeo*, 136 S. Ct. at 1550.

The question then is whether Rodriguez suffered any concrete harm. Although the bulk of the Amended Complaint simply alleges that the FDCPA was violated, there is one crucial paragraph where Rodriguez alleges that she was "confused, irritated and upset as a result" of receiving the false and conflicting information. Am. Compl. ¶ 55. So Rodriguez does not merely allege a procedural violation—she alleges that she actually was confused by the inconsistencies. That confusion suffices for a concrete injury, *see Syed v. M-I, LLC*, 853 F.3d 492, 499-500 (9th Cir. 2017) ("[W]e can fairly infer that Syed was confused by the inclusion of the liability waiver … . Therefore, Syed did allege a concrete injury and has Article III standing."), especially under the FDCPA, *Caprel v. Specialized Loan Servicing, Inc.*, 2017 WL 1739919, at *3 (N.D. Ill. May 4, 2017) (FDCPA violation caused concrete injury because it created "confusion, … requir[ing] [the debtor] to spend time and effort deciphering the letter."); *Verdun v. Fidelity Creditor Serv.*, 2017 WL 1047109, at *6 (S.D. Cal. Mar. 20, 2017) ("Plaintiff further established that he suffered concrete injuries by alleging that the letter left him confused and caused him to expend funds to hire an attorney to clarify his legal obligations."). For now, Rodriguez has met the concrete-harm requirement and the Court has subject matter jurisdiction. If the Defendants do not believe that Rodriguez was actually confused or otherwise harmed by the violations of the FDCPA, then they can conduct discovery on the issue and renew the standing argument again if the facts warrant it.

## B. FDCPA Violations

Next, the defense argues that the Amended Complaint fails to state adequate claims under the FDCPA. In evaluating the representations made by debt collectors, courts view the representations from the standpoint of the "unsophisticated" consumer or debtor. *See Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564-66 (7th Cir. 2004). Generally speaking, the FDCPA applies not only to communications sent directly to a consumer, but also to documents filed during the course of litigation. *See Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 811-12 (7th Cir. 2016). Because violations of the FDCPA are a "fact-bound determination of how an unsophisticated consumer would perceive the statement," a dismissal motion will only be granted if "there is no set of facts consistent with the pleadings under which the plaintiffs could obtain relief." *Id.* at 812 (citing *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 759 (7th Cir. 2006)).

**1. Discrepancies Between the Affidavit and Payoff Statement**

There are two primary sections of the FDCPA that are at issue in this case. Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute lists sixteen non-exhaustive examples of conduct that violate the provision. *Id.* Section 1692f works in much the same way. It prohibits use of "unfair or unconscionable means to collect or attempt to collect any debt," and then lists eight examples of conduct that would violate the section. 15 U.S.C. § 1692f.

In this case, the primary basis for the alleged falsity and unfairness is the discrepancy between the "Total Amount Due through 04/14/2016" in the Affidavit and the "Total Amount to Pay Loan in Full on 04/14/2016" in the Payoff Statement. The two amounts do not match. But Codilis argues that there is no conflict because BSI's Payoff Statement listed all charges associated with the loan—including attorney's fees paid as of that date—while the Affidavit did not. R. 21, Codilis Br. at 4. In other words, there is no inconsistency, because the documents sought to communicate different information.

But that subtlety would not be apparent to an unsophisticated debtor, or at least that is the reasonable inference at this pleading stage of the litigation. First of all, the words "Total Amount" would suggest, to an unsophisticated consumer, that if the consumer pays the amount on the letter, the debt would be discharged. That is what "Total" presumably means. Also, the as-of date is the exact same on each document. Nor do the documents communicate that there are other, unrelated charges due as of April 14, 2016. This is something that BSI should have known: BSI assigned the debt to Codilis to act on its behalf, *see* Am. Compl. ¶¶ 15-19, so it is reasonable to infer that BSI knew Rodriguez would owe Codilis attorney's fees not reflected in the Affidavit. *See* R. 33, Pl. Resp. at 10-11. Viewed through the lens of the unsophisticated consumer standard, and giving Rodriguez all reasonable inferences at this pleading stage, she states an FDCPA claim. *See* 15 U.S.C. § 1692e(2)(A) (prohibiting the false representation of the "character, amount, or

legal status of any debt … ."); *id.* § 1692e(10) (prohibiting the "use of any false representation or deceptive means to collect or attempt to collect any debt … .").

The other problem with the defense argument is that the descriptions of the fees and charges do not add up, even assuming that the documents were trying to convey different pieces of information. For one, it is not correct that the Affidavit simply failed to include the attorney's fees established in the Certificate. *See* Codilis Br. at 4-5. The Affidavit specifically includes a line item of $765.00 for attorney's fees that is *not* specified as "prior attorney fees" unconnected with the foreclosure fees that are later described in the Codilis Certificate. *See* Affidavit at 7; Codilis Br. at 4-5. The numbers do not add up even if one factors in the "Unpaid Fees" of $3,294.68 from the BSI Payoff Statement—remember that those fees were supposedly included in the Payoff Statement and caused the differing Affidavit and Payoff Statement totals. Codilis Br. at 4. What's more, even when adding or subtracting the fee line-items, the amounts due still do not match. *See* Codilis Br. at 5. None of Codilis's arguments actually reconcile the differing amounts. Discovery might reveal an explanation, but the Amended Complaint and the documents on their face do not. In any event, an unsophisticated consumer would expect that a letter communicating the "Total Amount" with a listed line for attorney's fees would include *all* attorney's fees incurred as of that date, not just *part* of the attorney's fees. The attorney's fees aspect of the claims survive.

## 2. Discrepancy Between Late Charges

Another apparent inconsistency is that the Payoff Statement lists $873.73 in unpaid late charges, while the Affidavit lists only $268.84 in "late charges accrued prior to the acceleration of the subject loan." Payoff Statement at 9-11. As Rodriguez points out, BSI cannot impose late charges for failure to make monthly payments after a loan has been accelerated. *See, e.g.*, *Rizzo v. Pierce & Associates*, 351 F.3d 791, 793 n.1 (7th Cir. 2003). If BSI was complying with the law and not charging Rodriguez late fees after the loan's acceleration, then both amounts must represent pre-acceleration charges—and they should not have been different numbers. If the larger amount includes post-acceleration late fees, then the Defendants are attempting to collect money not due to them, and the $873.73 misstates the amount that Rodriguez legally owed. So this discrepancy adequately states an FDCPA claim.

## 3. Misrepresentation About Loan's Due Date

Rodriguez also alleges that an unsophisticated consumer would be confused by the Payoff Statement's assertion that the next payment is due on March 1, *2015*, even though the letter was mailed over a year later, on March 16, *2016*. Am. Compl. ¶ 27. Codilis offers three responses. First, Codilis argues that the stated due date (March 1, 2015) is consistent with the due date in the foreclosure complaint. Codilis Br. at 6. That is wrong. The foreclosure complaint does not say that the next payment is due on March 1, 2015. Rather, it states that Rodriguez had not made payments due "for 03/01/2015, through the present." R. 21-2, Codilis Br. Exh. 2,

10

Compl. to Foreclose Mortgage at 2. It makes no attempt to state what the amount of Rodriguez's next payment would be but seems to try to collect the *entire* amount due on the loan—not just a monthly payment like the Payoff Statement requests.

Codilis's second argument is that it never sent the Payoff Statement to Rodriguez directly, but only included it as an attachment to the affidavit. Codilis Br. at 6. As a mere attachment, Codilis argues, this letter was not a demand for payment. But the Payoff Statement itself contradicts this argument because it states in no uncertain terms: "This is an attempt to collect a debt." Payoff Statement at 11; *see* 15 U.S.C. § 1692e(11). Also, the premise of the argument—that the Payoff Statement was never sent—if anything actually hurts Codilis's case. If BSI never sent this letter to Rodriguez, then the Payoff Statement is misleading because it purports to be a letter sent to Patricia Rodriguez and *not* merely a document created for litigation.

Finally, Codilis argues that the Affidavit and the attached Payoff Statement were not demands for payment because they were only evidentiary documents submitted in state court. Codilis Br. at 6. As noted earlier, however, the Seventh Circuit has held that the FDCPA can apply to documents filed during the course of litigation. *See Marquez*, 836 F.3d at 811-12. The Defendants submitted the documents in a case against Rodriguez, so she was still the recipient of the confusing representations. So the fact that these documents were submitted as a part of litigation does not undermine the claim.

### 4. BSI's Liability

BSI primarily relies on Codilis's motion to dismiss, but that motion is denied, so BSI remains in the case too. In any event, as discussed above, the Amended Complaint does give rise to fair inference that BSI created the Payoff Statement knowing that it would either be sent to Rodriguez or included in the foreclosure complaint, and did not indicate there would be other attorney's fees owed to Codilis. *See* Pl. Resp. at 10-11. Also, the Payoff Statement (created by BSI—not Codilis) included the March 1, 2015 date for the next payment, which was allegedly confusing to Rodriguez.[5]

### C. Litigation Privilege

Finally, quoting the Illinois Appellate Court, the Defendants argue that "there is no civil cause of action for misconduct which occurred in prior litigation… [p]etitions to redress injuries resulting from misconduct in judicial proceedings should be brought in the same litigation." *Johnson v. Johnson & Bell, Ltd.*, 7 N.E.3d 52, 57 (Ill. App. Ct. 2014) (quoting *Harris Trust & Savings Bank v. Phillips*, 506 N.E.2d 1370, 1377 (Ill. App. Ct. 1987)); R. 36, BSI Reply at 1-2. Because the documents were simply attached to the motion and not actually sent to Rodriguez, the Defendants argue that she cannot bring an action here to redress that prior wrong.

---

[5]Rodriguez also claims that BSI did not comply with § 1692e(11) because it did not communicate that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose … ." 15 U.S.C. §§ 1692e(11). But the BSI letter does indeed include that information. *See* Payoff Statement at 11 ("This is an attempt to collect a debt. Any information obtained will be used for that purpose.").

12

The doctrine invoked by the Defendants is known as the "litigation privilege," which holds that litigators are immune from suits for defamation and other torts arising out of statements, pleadings, affidavits, and filings made during a judicial proceeding. *See* 1A Stuart M. Speiser, Charles F. Krause, & Alfred W. Gans, *American Law of Torts* § 5:17.10 (2018). But that privilege is generally limited to tort claims like fraud and defamation. *See id; see also Turubchuk v. E.T. Simonds Construction Company*, 2017 WL 480738, at *4 (S.D. Ill. Feb. 3, 2017) ("The *Harris Trust* [litigation privilege] holding is narrow and limited to claims for re-litigation expenses in instances where a plaintiff alleges defamation in an underlying case."). An FDCPA claim, however, is not a tort but rather a federal statutory cause of action. The litigation privilege does not apply. And, as discussed above, the Seventh Circuit has held that the FDCPA *does* apply to representations "made in court filings in litigation." *Marquez,* 836 F.3d at 812.

## IV. Conclusion

For the reasons discussed above, the Defendants' motions to dismiss for lack of standing and failure to state a claim are denied. The status hearing of April 12, 2018 remains in place. By April 9, 2018, the parties shall file a joint status report to propose a prompt discovery schedule moving forward.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2018